13 P.3d 290

**In re MARXUS B.**

**No. 1 CA–JV 00–0013.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 24, 2000.

Richard M. Romley, Maricopa County Attorney By Rene Williams, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender By Suzanne W. Sanchez, Deputy Public Defender, Mesa, Attorneys for Appellant.

## OPINION

PATTERSON, Judge.

¶ 1 Marxus B. appeals from his adjudication of delinquency for possession of a firearm as a minor and carrying a concealed weapon and his resulting commitment to the Arizona Department of Juvenile Corrections (ADJC). We vacate his adjudication and remand to the juvenile court.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On November 8, 1999, Phoenix Police Officer Chris Tuniano responded to a call of shots fired near a canal. Upon a search of the area, the officer encountered Marxus on the street walking from the direction of the canal. While conducting a pat-down of Marxus, Turiano felt a "large, heavy metal object" in the small of Marxus' back, which turned out to be a 9–mm. semi-automatic firearm. Marxus told Turiano that he had fired the pistol to hear what it sounded like.

¶ 3 Marxus was arrested and charged with violating Arizona Revised Statutes Annotated (A.R.S.) section 13–3111 (Supp.1999), which states that an "unemancipated person who is under eighteen years of age ... shall not knowingly carry or possess on his person ... a firearm in any place that is open to the public." Concurrently, Marxus was also charged with violating A.R.S. section 31–3102 (Supp.1999) which prohibited him from carrying a concealed weapon. Marxus moved for dismissal of the possession charge based on *In re Cesar R.*, an opinion from Division Two of the Arizona Court of Appeals holding A.R.S. section 13–3111 unconstitutional. 309 Ariz. Adv. Rep. 36, 38, ¶ 11, 197 Ariz. 437, 440, ¶ 11, 4 P.3d 980, 983, ¶ 11 (App.1999), *review denied* (May 22, 2000). However, at that point, *Cesar R.* was pending review and thus the court did not dismiss the charge on that basis. Marxus was adjudicated delinquent on both counts. The court committed Marxus to at least seven months in ADJC and he now appeals. We have jurisdiction pursuant to A.R.S. section 12–120.21(A)(1)(1992) and Rule 24, Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**A.R.S. section 13–3111 is a special law.**

■ ¶ 4 Marxus argues that A.R.S. section 13–3111 is unconstitutional because it is a special or local law in violation of article IV, part 2, section 19 of the Arizona Constitution. He cites *Cesar R.* which holds the same. The State points out that this division need not follow Division Two and argues that the law is not unconstitutional because it does

not constitute special legislation. We agree with the holding in *Cesar R.* and find A.R .S. section 13–3111 to be a special law in violation of the Arizona Constitution.

¶ 5 This court reviews challenges to the constitutionality of a statute *de novo. See 3613 Limited v. Department of Liquor Licenses and Control,* 194 Ariz. 178, 182, ¶ 17, 978 P.2d 1282, 1286, ¶ 17 (App.1999).

¶ 6 Article IV, part 2, section 19(7) of the Arizona Constitution prohibits the legislature from enacting local or special laws involving the "[p]unishment of crimes and misdemeanors ." When determining whether a law constitutes special legislation, we conduct a three-pronged analysis to decide whether "(1) the classification is rationally related to a legitimate government objective, (2) the classification encompasses all members of the relevant class, and (3) the class is flexible, allowing members to move into and out of the class." *State v. Bonnewell,* 309 Ariz. Adv. Rep. 4, 5, ¶ 7, 196 Ariz. 592, 594, ¶ 7, 2 P.3d 682, 684, ¶ 7 (App.1999), *review denied* (May 23, 2000). The law is not special legislation if the classification is reasonable and all members of the class are treated alike. *See Lerma v. Keck,* 186 Ariz. 228, 234, 921 P.2d 28, 34 (App.1996). A class is unreasonable if we find it is "palpably arbitrary." *Tucson Elec. Power Co. v. Apache County,* 185 Ariz. 5, 13, 912 P.2d 9, 17 (App.1995).

¶ 7 The question whether A.R.S. section 13–3111 satisfied the three-pronged test was answered in the negative by Division Two of this court. In *Cesar R.,* the juvenile was charged and adjudicated delinquent for violating that statute. 197 Ariz. at 438, ¶ 1, 4 P.3d at 981, ¶ 1, 309 Ariz. Adv. Rep. at 36, ¶ 1. The juvenile challenged the constitutionality of the statute on the basis that it violated the Arizona Constitution because it was a special law. *Id.* The juvenile argued that the language in subsection H of the statute limiting its application only to minors in "counties with populations of more than five hundred thousand persons" essentially made the law applicable only in Maricopa and Pima Counties. *Id.* Because of that limitation, the juve-

nile submitted, the law was unconstitutional, and the court agreed. *Id.* Although we acknowledge the holding in *Cesar R.,*[1] we independently examine A.R.S. section 13–3111 to determine whether it is special legislation.

¶ 8 Turning to the three-pronged test, the first prong concerns whether the classification has a "rational relationship to a legitimate legislative purpose." *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990). When enacting A.R.S. section 13–3111, the legislature made several findings. The legislature first found that "[t]he overwhelming majority of minors in this state who keep and bear arms do so responsibly and in a law-abiding manner," but also found that "[a] minute number of juvenile offenders disproportionately threaten the public peace through their unlawful use or threatening exhibition of deadly weapons or dangerous instruments." 1993 Ariz. Sess. Laws, ch. 259, § 2(A)(1) and (2). We agree, as the court did in *Cesar R.,* that the legislature's findings establish that the State has a legitimate purpose in preventing unsupervised minors from irresponsibly possessing firearms.

¶ 9 The second prong of the constitutionality test requires an inquiry into the "inclusiveness of the classification created by the statute." *Cesar R.,* 309 Ariz. Adv. Rep. at 37, ¶ 6, 197 Ariz. at 439, ¶ 6, 4 P.3d at 982, ¶ 6. While the statute need not apply to "every person, place, or thing within the state," *Republic Inv.,* 166 Ariz. at 150, 800 P.2d at 1258, the law must apply equally to those similarly situated who come within its scope. *See City of Tucson v. Woods,* 191 Ariz. 523, 530, 959 P.2d 394, 401 (App.1997). The legislature's findings expressly stated that "[t]he subject of minors carrying, possessing or transporting firearms is a matter of statewide concern" and that "state law must continue to preempt local ordinances on the subject." 1993 Ariz. Sess. Laws, ch. 259, § 2(A)(4). Continuing on, the legislature noted that state laws "must continue to be uniform so that ... the act of crossing a city boundary will not inadvertently subject a minor to criminal penalties and all citizens in

1. This division need not follow the opinions of Division Two. *See Scappaticci v. Southwest Sav-* *ings & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983).

this state can have full confidence that they are fully protected by the same law." *Id.*

¶ 10 Subsection H of A.R.S. section 13–3111 states that the statute "applies only in counties with populations of more than five hundred thousand persons according to the most recent decennial census." Additionally, the statute includes four exceptions when the statute would not be applicable to minors, including hunting or marksmanship purposes, or while engaging in activities related to ranching or the production of agriculture. *See* A.R.S. § 13–3111(B). These exceptions, read with subsection H, indicate that, because the law was intended to apply statewide, the legislature was concerned with the law's application to minors in the less-populated, rural counties.

¶ 11 While we find the legislature's consideration of the rural counties valid, there is no indication that the minors or parents in Maricopa and Pima Counties are more irresponsible with their firearms than are those in other counties. Although, as the State points out, "legislative classification can be based on rational speculation unsupported by evidence," *Tucson Elec. Power Co.*, 185 Ariz. at 14, 912 P.2d at 18, we cannot support such a disparate application of the law in the face of the legislative findings. Subsection H created limitations that accomplished what the legislature sought to avoid, namely that, once a minor crossed into either Maricopa or Pima County, that minor was subject to new criminal penalties. Additionally, the statute only provided protection to citizens residing in Maricopa or Pima Counties. Again, after the legislature found that this was a matter of statewide importance, protecting only a portion of the state's population is unexplainable.

¶ 12 Our independent examination of the legislature's intent is reenforced by Division Two's conclusion that the concern regarding minors' possession of firearms was indeed statewide. We concur with Division Two's failure to decipher how the legislature's findings and intent comports with or supports the language of the statute. Therefore, the language in subsection H is an anomaly, and we find the limitation of the statute's application only to counties with more than a certain population palpably arbitrary.

¶ 13 The third prong requires an examination of the "elasticity" of the statutorily created class. "Sufficient elasticity exists if the classification not only 'admit[s] entry of additional persons, places, or things attaining the requisite characteristics, but also [enables] others to exit the statute's coverage when they no longer have those characteristics.'" *Cesar R.*, 309 Ariz. Adv. Rep. at 37, ¶ 8, 197 Ariz. at 439, ¶ 8, 4 P.3d at 982, ¶ 8 (quoting *Republic Inv.*, 166 Ariz. at 150, 800 P.2d at 1258). This court may consider "the actual probability that others will come under the act's operation when the population changes. Where the prospect is only theoretical, and not probable, we will find the act special or local in nature." *Republic Inv.*, 166 Ariz. at 151, 800 P.2d at 1258.

¶ 14 In *Cesar R.*, the court looked at census figures and found that both Maricopa and Pima Counties had populations that were more than 500,000 in 1980 and noted that their populations had grown substantially since then. 309 Ariz. Adv. Rep. at 37, ¶ 10, 197 Ariz. at 440, ¶ 10, 4 P.3d at 983, ¶ 10. Relying on those same census figures, the court found that it was "quite unlikely" that other counties would reach population levels such that they would enter the class. *Id.* At best, the court noted, even the county experiencing the most growth would only reach a population of 500,000 in ten years. *Id.* The court thus concluded that the elasticity of the class was lacking. Id. We agree with that conclusion.

¶ 15 Based on our analysis, we find that A.R.S. section 13–3111 is a special or local law in violation of article IV, part 2, section 19(7) of the Arizona Constitution. Also, because we do not find the decision to be based on "clearly erroneous principles," *Scappaticci v. Southwest Sav. & Loan Assoc.*, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983)(quoting *Castillo v. Industrial Comm'n*, 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974)), this court concurs with the decision in *Cesar R.*

**Detention is appropriate for carrying a concealed weapon.**

¶ 16 Marxus argues that, because we find A.R.S. section 13–3111 unconstitutional, he is left with being adjudicated delinquent only on a misdemeanor charge and, therefore, his commitment to ADJC is excessive. We agree to remand for a new disposition because one offense now has been vacated. However, we nonetheless wish to point out that commitment to ADJC would not be unwarranted in this case.

¶ 17 Prior to Marxus' arrest for the weapons charge, his life was one without a future or a direction. Marxus had never known his father, and his mother would not allow him to live with her because of his past behavior. He saw his mother rarely and inconsistently. Extended family was unwilling to take custody of Marxus as well after a previous attempt at that arrangement had failed. He had dropped out of school and had never been employed. Marxus had been a gang member since the age of eleven and was heavily entrenched in the gang culture. At the time of his arrest, Marxus was living with fellow gang members whom he felt were his only family. Marxus also was the father of an infant.

¶ 18 At the time of his disposition hearing, Marxus had shown a willingness to adapt to his environment while in detention and seemed to want to turn his life around. He had been doing drugs and drinking heavily since the age of eight years old. However, while in detention, Marxus had sobered, stayed off drugs and was receiving treatments for the hallucinations from which he suffered, those no doubt a result of his drug use at such a young age. He stated that, even though he "did a lot of drugs" prior to his arrest, he had not "thought about any of that" since then. Marxus further stated that, in the past, he did drugs when times "got stressful" and he "wanted to escape" but that now he "want[ed] to stay clean."

¶ 19 Marxus' behavior was "good," and he had earned a "red shirt" by the time of his disposition hearing. Although during his detention, he was involved in two gang-related fights, the pre-disposition report attributed his poor behavior to his "system clearing up of drugs." In spite of Marxus' initial statement that he would never wear a red shirt because of his gang affiliation, he eventually did because "[the judge] wanted [him] to wear it."

¶ 20 If "[t]he purpose of disposition after an adjudication of delinquency is rehabilitation, not punishment," *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 8, 975 P.2d 152, 153 (App. 1999), we are hard-pressed to find a better example of a juvenile who has fulfilled that purpose. Marxus argues that commitment to ADJC is "onerous." We instead find that his detention may provide Marxus with the opportunity to stop the downward spiral of his life before he reaches the age of majority and is not eligible for the same services that, hopefully, continue to be made available to him by ADJC. Additionally, despite noteworthy efforts by many of the case workers involved, aside from committing him to ADJC, there were no options available for the court other than to release Marxus back to his life living with his fellow gang members and roaming the streets drunk and/or drugged.

**CONCLUSION**

¶ 21 Marxus' adjudication under A.R.S. section 13–3111 is vacated. We remand this matter to the juvenile court for further proceedings consistent with this opinion.

CONCURRING: JON W. THOMPSON, Judge, and SUSAN A. EHRLICH, Judge.