IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEVE GALLARDO, an individual; LYDIA GUZMAN, an individual;
MARCUS LARA, an individual; ROSE MARIE DURAN LOPEZ, an
individual; RANDLOPH LUMM, an individual; and
MARTIN QUEZADA, an individual,
*Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, a body politic; HELEN PURCELL, in her official
capacity as Maricopa County Recorder; KAREN OSBORNE, in her official
capacity as Maricopa County Director of Elections; MARICOPA COUNTY
BOARD OF SUPERVISORS; and DENNY BARNEY, STEVE CHUCRI,
ANDY KUNASEK, CLINT L. HICKMAN, and MARY ROSE WILCOX, in
their official capacities as members of the Maricopa County Board of
Supervisors,
*Defendants/Appellees*.

No. 1 CA-CV 14-0272A
FILED 07-23-2014

Appeal from the Superior Court in Maricopa County
No. CV2013-017137
The Honorable Randall H. Warner, Judge

**REVERSED AND REMANDED**

COUNSEL

Perkins Coie LLP, Phoenix
By Paul F. Eckstein, Jessica L. Everett-Garcia, D. Andrew Gaona and
Alexis E. Danneman

Lawyers' Committee for Civil Rights Under Law, Washington, D.C.
By Robert A. Kengle and Rosa E. Zamora, *Pro Hac Vice*
*Co-Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Robert L. Ellman and David D. Weinzweig
*Counsel for Defendant/Appellee State of Arizona*

––––––––––––––––––––––––––

**OPINION**

Presiding Judge Michael J. Brown delivered the Opinion of the Court, in which Judge Donn Kessler joined and Judge Randall M. Howe specially concurred.

––––––––––––––––––––––––––

**B R O W N**, Judge:

¶1    In this opinion we address the constitutionality of a statute that mandates adding two at-large positions to the boards of community college districts located within counties of at least three million people. For reasons explained below, we conclude the statute is a special law that violates the Arizona Constitution.

**BACKGROUND**

¶2    Ten community college districts have been formed in Arizona. Each district is governed by a local board consisting of five members elected to six-year terms from five precincts within the district. Ariz. Rev. Stat. ("A.R.S.") § 15-1441(A). In April 2010, the legislature amended A.R.S. § 15-1441(A) ("Amendment") as follows:

> Beginning July 1, 2012, in addition to the governing board members who are elected from each of the five precincts in a community college district, a county with a population of at

least three million persons shall elect two additional governing members from the district at large.

A.R.S. § 15-1441(I). The Amendment thus mandated that for a "county" with a population of more than three million, that county will elect two additional board members and the terms of all seven members will be four years.[1] With a population of approximately four million, only Maricopa County falls within the scope of the Amendment.[2]

¶3 Because the State of Arizona sought to obtain preclearance of the Amendment from the Department of Justice under Section 5 of the Voting Rights Act ("VRA"), the effective date was delayed. The United States Supreme Court's decision in *Shelby County, Alabama v. Holder*, 133 S.Ct. 2612, 2631 (2013), however, removed the State's preclearance obligation under the VRA and the Arizona Attorney General opined that the next applicable election for the two at-large board members would be the general election in 2014.

¶4 In December 2013, Appellants filed a complaint in the superior court seeking a declaration that the Amendment is unconstitutional under the provision of the Arizona Constitution that prohibits enactment of local or special laws. Appellants also sought an order enjoining the State and various public officials from implementing the Amendment.

¶5 In support of their argument that the law is unconstitutional because it would effectively apply only in Maricopa County, Appellants submitted an uncontroverted expert disclosure report forecasting the prospective growth of all fifteen Arizona counties. The report noted that none of the twelve least populated counties is expected to reach a

---

[1] Subsection C of A.R.S. § 15-1441 provides that after the first election for a district, "each [board] member's term is six years, except for a county with a population of at least three million persons, beginning at the next election after June 30, 2012, each member's term is four years."

[2] Inexplicably, the legislature used the population of a county, instead of a district, as the trigger point for application of the Amendment even though the boundaries of a district and a county are not necessarily coterminous. *See* A.R.S. § 15-1441(B) ("Where two or more counties constitute a district, as many precincts shall be set up by the board of supervisors in each county as the county is entitled to membership.").

population of three million people in the next five hundred years. Of the three remaining counties, Maricopa had a population of 3,817,117 in 2010, and Pima and Pinal will likely not reach a population of three million until the 22nd Century, and possibly never.

¶6        Following oral argument, the superior court "accept[ed] as true that no county other than Maricopa is likely to have three million people in the foreseeable future," but nonetheless upheld the constitutionality of the Amendment. The court reasoned that the legislature may separately address the unique issues faced by Maricopa County and that a class of one is acceptable "so long as the classification is related to the statute's legitimate purpose." This timely appeal followed.

## DISCUSSION

¶7        Appellants argue that the Amendment is an impermissible special law in violation of the Arizona Constitution. Primarily, they contend the population threshold creates a class of one, namely, Maricopa County, and that no other county will enter the class in the foreseeable future.

¶8        We review the constitutionality of a statute de novo. *Town of Gilbert v. Maricopa County*, 213 Ariz. 241, 245, ¶ 11, 141 P.3d 416, 420 (2006). We construe the statute to give it a reasonable meaning and apply a strong presumption in favor of its constitutionality. *Long v. Napolitano*, 203 Ariz. 247, 254, ¶ 16, 53 P.3d 172, 179 (App. 2002). However, we "will not refrain from declaring a legislative act an unconstitutional special or local law when the facts so require." *Republic Inv. Fund I v. Town of Surprise*, 166 Ariz. 143, 148, 800 P.2d 1251, 1256 (1990). "An act, even though general in form, will be treated as a special act if that is its effect." *Id*. (citing 2 N. Singer, *Sutherland Statutes & Statutory Construction* § 40.02 at 233 (4th ed. 1986)); *see also* 2 E. McQuillan, The Law of Municipal Corporations § 4.50, at 125 (3rd ed. 1988) ("Whether a statute is general or special depends on its substance and practical operation, rather than on its title, form or phraseology.").

¶9        The Arizona Constitution provides that "[n]o local or special laws shall be enacted" regarding, among other things, the "conduct of elections." Ariz. Const. Art. 4, Pt. 2, § 19(11). The special law provision prohibits legislation that "unreasonably and arbitrarily discriminates in favor of a person or class by granting them a special or exclusive immunity, privilege, or franchise." *Republic Inv.*, 166 Ariz. at 148, 800 P.2d at 1256 (quoting *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 557,

637 P.2d 1053, 1060 (1981)).  The policy underlying the special law prohibition is "[f]ear of legislative favoritism[.]"  *Petitioners for Deannexation v. City of Goodyear*, 160 Ariz. 467, 470, 773 P.2d 1026, 1029 (App. 1989).  Indeed, "the framers acknowledged that specific prohibitions against special laws were necessary and desirable."  *Id.*  As explained by our supreme court, the special law prohibition also "confine[s] the power of the legislature to the enactment of general statutes conducive to the welfare of the state as a whole, [] prevent[s] diversity of laws on the same subject, [] secure[s] uniformity of law throughout the state as far as possible" and "prevents the enlargement of the rights of [some] persons in discrimination against others' rights[.]"  *State Comp. Fund v. Symington*, 174 Ariz. 188, 192, 848 P.2d 272, 277 (1993).

¶10        The special law prohibition does not necessarily bar the legislature from enacting laws that confer privileges only on classes defined by population; however, such laws must comply with the three-part test adopted by our supreme court:

> Legislation does not violate the special law prohibition if (1) the classification is rationally related to a legitimate governmental objective, (2) the classification is legitimate, encompassing all members of the relevant class, and (3) the class is elastic, allowing members to move in and out of it.

*Long,* 203 Ariz. at 253, ¶ 14, 53 P.3d at 178 (citing *Republic Inv.*, 166 Ariz. at 149, 800 P.2d at 1257).  If a classification fails to satisfy any of the three standards, it is unconstitutional.  *See Republic Inv.*, 166 Ariz. at 149, 800 P.2d at 1257; *Town of Gilbert*, 213 Ariz. at 246, ¶ 20, 141 P.3d at 421 ("All three prongs of the test must be satisfied in order for the law to be considered general.").  Because we conclude the Amendment violates the third prong, requiring elasticity, we need not address the first two prongs of the test.

¶11        A statute is "special" if its scope is limited to a particular case and it "looks to no broader application in the future."  *Republic Inv.*, 166 Ariz. at 150, 800 P.2d at 1258 (internal quotations omitted).  To satisfy the elasticity requirement, a classification must be "open, not only to admit entry of additional persons, places, or things attaining the requisite characteristics, but also to enable others to exit the statute's coverage when they no longer have those characteristics."  *Id.* at 150, 800 P.2d at 1258.  The number in the class is not determinative, and a statute is not special simply because, at the time of enactment, only one entity will fall within the class.  *See Long*, 203 Ariz. at 258, ¶ 36, 53 P.3d at 1783 ("The

legislature may construct a population-based classification that applies only to one county at the time of enactment."); *Town of Gilbert*, 213 Ariz. at 246, ¶ 20, 141 P.3d at 421 (same). As the number in the class decreases, however, we are more likely to find the classification invalid. *Republic Inv.*, 166 Ariz. at 151, 800 P.2d at 1259.

**¶12** "To decide whether a statute legitimately classifies, we will consider the actual probability that others will come under the act's operation when the population changes." *Id.* When the "prospect is only theoretical, and not probable, we will find the act special or local in nature." *Id.* Therefore, the conditions that permit entry into the class must "be not only possible, but reasonably probable, of attainment." *Id.* at 150, 800 P.2d at 1258 (quoting with approval *Petitioners for Deannexation*, 160 Ariz. at 471-72, 773 P.2d at 1030-31 (noting that a classification must "permit[] other individuals or entities to come within the class . . . within a reasonable time, or if at all")).

**¶13** Here, the three million population threshold is not tethered to a specific county; thus, the Amendment is not facially inelastic. The uncontroverted evidence reflects, however, that even assuming a high rate of growth, "the population [will not] reach [three] million until the end of the 21st century in Pima County and [] after 2090 in Pinal County." Indeed, Appellants' expert opined that, using a lower, more realistic growth rate, neither Pima nor Pinal counties will reach three million until the 22nd century, and perhaps never.[3] Moreover, none of the remaining counties will reach the population threshold for at least five hundred years. Because the likelihood that any county other than Maricopa will reach a population of three million is merely theoretical, it is not reasonably probable that any other community college districts will be able to enter the class. We therefore conclude the Amendment is inelastic. *See Republic Inv.*, 166 Ariz. at 151, 800 P.2d at 1259; *see also Haman v. Marsh*, 467 N.W.2d 836, 849 (Neb. 1991) (citing *Republic Inv.*, and explaining that "[if] the prospect is merely theoretical, and not probable, the act is special legislation. The conditions of entry into the class must not only be

---

[3] The bill summaries for House Bill 2261 reflect that the legislature was aware of the relevant census information in setting the population threshold. *See* Ariz. H.B. Summary, 2010 Reg. Sess. H.B. 2261 (Feb. 2, 2010) ("According to the United States Census, Maricopa County is the only county in Arizona with a population over three million persons. Pima County has the next highest population at 843,746.").

possible, but reasonably probable of attainment."); *Sierra Club v. Dep't of Transp. of State of Hawai'i*, 202 P.3d 1226, 1251 (Haw. 2009) (citing *Republic Inv.* and *Haman*, and stating that "[t]hese cases teach that in determining whether a law *creates an illusory class* depends not only on whether others may theoretically enter the class, but on the 'actual probability' that others will enter the class in the future.") (emphasis added).

¶14　　　This conclusion is consistent with cases from this court that have addressed the "reasonable probability" issue within the elasticity standard. In *Town of Gilbert*, we held that the population parameters placed on legislation governing the formation of county island districts constituted an impermissible special law because there was no probability that any town, other than Gilbert, "would fall within the population-based classifications of the legislation" within "the next fifteen to twenty years." 213 Ariz. at 247, ¶ 22, 141 P.3d at 422. We explained that "the remote possibility of only one other entity being able to enter the class in the next nineteen years is insufficient to satisfy the third prong of elasticity." *Id.* at ¶ 23. Likewise, we previously held that legislation prohibiting minors from possessing firearms in public that applied only to "counties with populations of more than five hundred thousand persons" constituted an impermissible special law because no county, other than Maricopa and Pima, would reach the population threshold "for more than ten years." *In re Cesar R.*, 197 Ariz. 437, 440, ¶ 10, 4 P.3d 980, 983 (App. 1999); *see also In re Marxus B.*, 199 Ariz. 11, 14, ¶¶ 13-14, 13 P.3d 290, 293 (App. 2000) (expressing agreement with the holding in *In re Cesar R.*).

¶15　　　The State cites *Long* for the proposition that no "temporal limitation" need be applied when analyzing legislation's elasticity. In that case, a taxpayer challenged legislation creating and implementing the Tourism and Sports Authority ("TSA"), contending, among other things, that the legislation was an unconstitutional special law. 203 Ariz. at 251, ¶ 1, 53 P.3d at 176. The TSA legislation at issue applied to "any county that has a population of more than two million persons." *Id.* at 252, ¶ 6, 53 P.3d at 177. The taxpayer argued that the TSA legislation was inelastic because no county other than Maricopa County could attain the classification criteria. *Id.* at 258, ¶ 37, 53 P.3d at 183. Specifically, the taxpayer argued that "even if other counties achieve the population threshold, they can never enter the TSA classification because they could not call the required election by August 1, 2000." *Id.* We disagreed, explaining that the population threshold was not tied to a specific date or census and "the 2000 county election" served "as a triggering device for the TSA legislation rather than as a criterion for class participation." *Id.* at 258-59, ¶¶ 38, 41, 53 P.3d at 183-84. Thus, although we concluded that the

population classification used in the TSA legislation was sufficiently elastic, we did not address the actual or reasonable probability that another entity would enter the class. *Id.* at 260, ¶ 45, 53 P.3d at 185. Therefore, *Long* does not provide guidance in this case for analyzing the temporal limitations of the elasticity prong.[4]

**¶16**        Applying the governing principles our supreme court has adopted regarding elasticity, we hold that the Amendment, which essentially creates a unique election system for the board members of the Maricopa County Community College District,[5] constitutes a special law in violation of the Arizona Constitution.

**¶17**        In reaching this conclusion, we acknowledge the State's contention that no specific parameters exist for determining the likelihood that potential members of a particular class will reach a specific population threshold and that the legislature should not be required "to guess at what is constitutional" when drafting statutes. Additional guidance on the elasticity prong from our supreme court, identifying what factors should be used to determine whether entry into a class is reasonably probable of attainment, would be helpful in the appropriate case. The absence of such guidance, however, does not permit us to ignore the plain text of the constitutional prohibition against enactment of special laws and the case law interpreting that clause. Since before statehood, Arizona's courts have followed the general principle that conditions of a classification must be reasonably attainable. *See Bravin v.*

---

[4]      At oral argument on appeal, the State asserted that a reasonable probability of admission to the class could be met without any temporal limitation. It argued that even if another county could enter the class in 500 or even 1000 years, that would be sufficient. We reject that argument as confusing possibility and probability. Given enough time, almost anything is possible. The applicable standard for elasticity is "reasonable probability." Moreover, the State's argument fails to recognize that the conditions of the legislative classification must be reasonably attainable, which necessarily includes a temporal component.

[5]      As noted above, the Amendment provides for the addition of two at-large positions and also establishes that all seven board members will serve four-year terms, as opposed to the six-year terms that apply to all districts that are located in counties with a population under three million. *See supra* ¶ 2.

*Mayor and Common Council*, 4 Ariz. 83, 89-90, 33 P. 589 (1893) (explaining a classification is elastic when the likelihood that another entity will meet the conditions defining a particular class is "not only possible, but reasonably probable, of attainment."). Given that standard, together with the uncontroverted evidence in this case reflecting that no other entity will likely reach the three million population threshold for more than eighty-five years, the probability that another entity will enter the class is attenuated and theoretical.

¶18 Appellants request an award of attorneys' fees under the private attorney general doctrine, which is an equitable rule permitting courts to award attorneys' fees to parties who have vindicated a right that "(1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance." *Dobson v. State*, 233 Ariz. 119, 124, ¶ 18, 309 P.3d 1289, 1294 (2013) (quoting *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989)). The State has not disputed that a fee award would be appropriate if Appellants prevail. Because Appellants have succeeded in showing that the Amendment violates the Arizona Constitution, a fee award is appropriate. We therefore award Appellants their reasonable attorneys' fees incurred on appeal upon their compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶19 For the foregoing reasons, we reverse the superior court's order and remand for further proceedings consistent with this opinion.

H O W E, J., Specially Concurring

¶20 I concur with the Majority's conclusion that the Amendment fails the elasticity prong of the special law analysis as set forth in *Republic Inv. Fund I v. Town of Surprise*, 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990). Even when a statutory classification is facially elastic, it nevertheless may be operationally inelastic if the prospect that another person or entity will enter the class "is only theoretical and not probable." *Id.* at 151, 800 P.2d at 1259. The evidence before the superior court was that Pima and Pinal Counties—Arizona's most populous counties after Maricopa County—will not meet the statute's three million population threshold until the 22nd century, if ever. Under this circumstance, I agree

that the statutory class is inelastic and therefore the Amendment is an unconstitutional special law.

¶21   I write separately, however, to express concern about this court's interpretation of our supreme court's "theoretical and not probable" language from *Republic*. The language must be considered in the context of the statute in that case. The statute established a class based on a city or town's population as of the date of a particular census. *Id.* at 147, 800 P.2d at 1255. The class was by definition inelastic because it permitted no entrance or exit.

¶22   This court has been inconsistent with its interpretation of the "theoretical and not probable" language. Relying on this language, this court has held unconstitutional a statute that established a class defined by a population threshold that would not be met for nineteen years, *Town of Gilbert v. Maricopa County*, 213 Ariz. 241, 247 ¶ 23, 141 P.3d 416, 422 (App. 2006), as well as one that would not be met for ten years, *In re Cesar*, 197 Ariz. 437, 440 ¶ 9, 4 P.3d 980, 983 (App. 1999).[6] Relying on *Republic*'s context, however, this court has upheld as a general law a statute that established a two million county population threshold because it was not tied to a particular census and "any county may seemingly enter the class upon achieving the requisite population and may exit upon falling below that level." *Long v. Napolitano*, 203 Ariz. 247, 258 ¶ 38, 53 P.3d 172, 183 (App. 2002). Whether any other county's population was projected to reach the statutory threshold in any time frame was apparently not considered.

¶23   Our inconsistent interpretations give the legislature no guidance on the elasticity prong's meaning. Establishing statutory classifications requires line-drawing, which "is peculiarly a legislative task and an unavoidable one." *Massachusetts Bd. Of Regents v. Murgia*, 427 U.S. 307, 314 (1976). The legislature may enact a statute that applies to one entity without being an unconstitutional special law, "if that entity is the

---

[6]  Interestingly, the courts' discussion of the elasticity of the statutory class was unnecessary in each case because the statutes in question failed other prongs of the special law analysis. *Town of Gilbert*, 213 Ariz. at 246 ¶ 17, 141 P.3d at 421 (statute did not encompass all members of the relevant class); *Cesar*, 197 Ariz. at 439 ¶ 6, 4 P.3d at 982 (limiting statute's application to Maricopa and Pima Counties was irrational classification).

only member of a legitimate class" and the class is elastic. *Republic Inv.*, 166 Ariz. at 150, 800 P.2d at 1258. But which interpretation of "elastic" applies: the expansive interpretation of *Long*, or the cramped interpretation of *Town of Gilbert* and *Cesar*? The legislature may have established the three million population threshold in this case based on our holding in *Long*. A more cautious legislature might have considered *Town of Gilbert* and *Cesar* in making its classification. But each decision remains good law, and the legislature is at sea in deciding which to follow. Our decision today does not resolve this dilemma.

**¶24**        I agree with the Majority's conclusion that the Amendment is unconstitutional because its application is based on a population threshold that the evidence shows may never be reached. But left unaddressed today is what time frame the legislature may rely upon to establish such a threshold. Although the legislature cannot gaze so far into the future that a population threshold becomes merely a distant expectation for succeeding generations, surely it cannot be constrained to focus myopically only on next year's or the next decade's population projections. How far the legislature can look ahead, however, depends on the meaning of the supreme court's decision in *Republic*, and that is an issue only the supreme court can resolve.



Ruth A. Willingham · Clerk of the Court
FILED: gsh