IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HAROLD VANGILDER, et al., *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellee/Cross-Appellee*,

PINAL COUNTY, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-TX 19-0001
FILED 1-16-2020

Appeal from the Arizona Tax Court
No. TX2017-000663
The Honorable Christopher T. Whitten, Judge

**REVERSED IN PART; AFFIRMED IN PART**

COUNSEL

Goldwater Institute, Phoenix
By Timothy Sandefur, Matthew Robert Miller
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Mooney Wright & Moore, P.L.L.C, Mesa
By Paul J. Mooney
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Arizona Attorney General's Office, Phoenix
By Scot G. Teasdale, Jerry A. Fries, Lisa A. Neuville
*Counsel for Defendant/Appellee/Cross-Appellee*

Pinal County Attorney's Office, Florence
By Christopher C. Keller
*Co-Counsel for Defendant/Appellant/Cross-Appellee Pinal County*

Ballard Spahr L.L.P., Phoenix
By Joseph A. Kanefield, Brian Schulman, Chase Bales
*Co-Counsel for Defendants/Appellants/Cross-Appellees Pinal County and Pinal Regional Transportation Authority*

Fennemore Craig, P.C., Phoenix
By Patrick Irvine, Taylor Burgoon
*Co-Counsel for Defendants/Appellants/Cross-Appellees Pinal County and Pinal Regional Transportation Authority*

Sims Mackin, Ltd., Phoenix
By William J. Sims
*Co-Counsel for Defendant/Appellant/Cross-Appellee Pinal Regional Transportation Authority*

Rose Law Group, P.C., Scottsdale
By Evan Bolick, Johathan Udell
*Amicus Curiae for Pinal Partnership Inc.*

Dickson Wright P.L.L.C., Phoenix
By Scott A. Holcomb, Vail C. Cloar
*Amicus Curiae for Town of Queen Creek*

Fitzgibbons Law Office, P.L.C., Casa Grande
By Denis M. Fitzgibbons
*Amicus Curiae for City of Maricopa and City of Coolidge*

Florence Town Attorney's Office, Florence
By Clifford L. Mattice
*Amicus Curiae for Town of Florence*

The Cavanagh Law Firm, P.A., Phoenix
By James G. Busby, Jr., Karen C. Stafford
*Amicus Curiae for Arizona Tax Research Association and The Arizona Free Enterprise Club*

---

**OPINION**

Presiding Judge Kenton D. Jones delivered the Opinion of the Court, in which Judge James B. Morse Jr. and Judge Diane M. Johnsen joined.

---

**J O N E S**, Judge:

**¶1**          In 2017, Pinal County voters simultaneously approved Proposition 416 (Prop 416) to adopt a regional transportation plan and Proposition 417 (Prop 417) to enact an excise tax to fund the plan.  In this appeal, Appellants, Pinal County (the County) and the Pinal Regional Transportation Authority (the RTA), appeal from the tax court's order invalidating the excise tax, and Cross-Appellants (collectively, Vangilder) challenge the court's order denying their request for an award of attorneys' fees.  The Arizona Department of Revenue (ADOR) joins Vangilder in asserting the tax is invalid but joins Appellants in defending Prop 417's constitutionality and opposing Vangilder's claim for fees.

**¶2**          We find the Prop 417 tax to be valid.  The RTA's authorizing resolution does not change the substance of the question posed to and approved by the voters; the tax, by its terms, applies across all transaction privilege tax (TPT) classifications; and the tax includes a valid, constitutional modified rate as applied to the retail sales classification.  Accordingly, we reverse the order invalidating the tax.  Because Vangilder is no longer the successful party in the tax court, we affirm the denial of his request for attorneys' fees.

**FACTS AND PROCEDURAL HISTORY**

**¶3**          The RTA is a public improvement and taxing subdivision of the State of Arizona established by the Pinal County Board of Supervisors (the Board) in 2015 to coordinate multi-jurisdictional transportation planning, improvements, and funding.  *See* Ariz. Rev. Stat. (A.R.S.) § 48-5302[1] (governing the establishment of a regional transportation authority).  Arizona law authorizes the RTA to formulate a plan for transportation projects and propose an excise tax to pay for them.  *See generally* A.R.S. §§ 48-5309, -5314.  By statute, a county transportation excise tax must be

---

[1]      Absent material changes from the relevant date, we cite a statute's current version.

"approved by the qualified electors voting at a countywide election."
A.R.S. § 42-6106(A); *see also* A.R.S. § 48-5314(F).

¶4        In June 2017, the RTA adopted the Pinal County Regional
Transportation Plan (the Plan), which identifies key roadway and
transportation projects to be developed over the next twenty years.  In the
same resolution (the June Resolution), the RTA asked the County to
schedule a special election on the Plan and on "the issue of levying a
transportation excise tax at a rate equal to one-half percent (0.005%) [sic] of
the gross income from the business activity upon every person engaging or
continuing in the business of selling tangible personal property at retail . . .
needed to fund the Plan."  The June Resolution further stated that the tax
rate upon retail sales would be a "variable or modified rate," in that the tax
would apply only to the first $10,000 in gross income from the sale of any
single item of tangible personal property, effectively capping the tax at $50
per item.

¶5        Before the election, and as directed by A.R.S. § 48-5314(C), the
Board printed a publicity pamphlet describing Prop 416 and Prop 417 (the
Pamphlet).  The RTA "ratified, confirmed, approved and adopted [the
Pamphlet] in the form presented" in October 2017 (the October Resolution).
The Pamphlet detailed the planned transportation projects and explained
that they could be completed only if voters approved the excise tax in Prop
417.  As relevant here, the Pamphlet further explained:

> If Proposition 417 is approved by the voters, the
> Transportation Excise Tax would . . . be assessed on the same
> business transactions that are subject to the State of Arizona
> transaction privilege (sales) tax [(TPT)], but at a rate equal to
> 10% of the State tax . . . .  [T]he Transportation Excise Tax rate
> will generally be 0.5% or 1 cent on each $2 o[f] State taxable
> items.

The Pamphlet identified each of the sixteen business classifications subject
to the TPT and detailed the rates at which the transportation excise tax
would apply to each class.[2]  *See* A.R.S. §§ 42-5061 to -5076.  With respect to

---

2        The TPT is a tax "on the privilege or right to engage in an occupation
or business in the State of Arizona" and applies at varying rates to "the
gross receipts of the seller's business activities."  *CCI Europe, Inc. v. ADOR*,
237 Ariz. 50, 52, ¶ 9 (App. 2015) (citations omitted); *see also* A.R.S. § 42-
5008(A) (levying a privilege tax "for the purpose of raising public money"
that is "measured by the amount or volume of business transacted by

the retail sales classification, the Pamphlet described the same two-tiered structure outlined in the June Resolution. The Pamphlet estimated that revenues from the tax across all business classifications would total approximately $640 million over twenty years — the precise amount needed to fund the projects detailed within the Plan.

¶6        The question ultimately posed to the voters was stated in both the Pamphlet and official ballot:

**PROPOSITION 417**
**(Relating to County Transportation Excise (Sales) Taxes)**

Do you favor the levy of a transportation excise (sales) tax including at a rate equal to one-half percent (0.5%) of the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail; provided that such rate shall become a variable or modified rate such that when applied in any case when the gross income from the sale of a single item of tangible personal property exceeds ten thousand dollars ($10,000), the one-half percent (0.5%) tax rate shall apply to the first ten thousand dollars ($10,000), and above ten thousand dollars ($10,000), the measure of tax shall be a rate of zero percent (0.0%), in Pinal County for twenty (20) years to provide funding for the transportation elements contained in the Pinal Regional Transportation Plan?

Do you favor the levy of a transaction privilege (sales) tax for regional transportation purposes, including at a variable or modified rate, in Pinal County?

        YES   _____

        NO   _____

(A "YES" vote has the effect of imposing a transaction privilege (sales) tax in Pinal County, including at a variable or modified rate, for twenty (20) years to provide funding for the

_____

persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income, as the case may be, as prescribed by [Arizona statutes]").

transportation projects contained in the Regional Transportation Plan.)

(A "NO" vote has the effect of rejecting the transaction privilege (sales) tax for transportation purposes in Pinal County.)

In November 2017, Pinal County voters approved both the regional transportation plan set out in Prop 416 and the transportation excise tax set out in Prop 417.

¶7        The following month Vangilder filed a complaint to enjoin ADOR, the County, and the RTA from collecting and/or enforcing the tax, alleging it was invalid and unconstitutional.[3]   The tax court resolved competing motions for summary judgment in Vangilder's favor but denied his request for an award of attorneys' fees under the private attorney general doctrine.   The parties timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

I.        **The Prop 417 Tax is Valid.**

¶8        Resolution of this appeal requires us to determine the scope and legality of the tax enacted by the voters via Prop 417.  The interpretation and application of a voter-approved measure present questions of law we review *de novo*. *See Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325, ¶ 11 (2014).

### A.        **The Authorizing Resolution Does Not Invalidate the Tax.**

¶9        Vangilder first contends the tax is invalid because the June Resolution described a tax on "the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail." *See supra* ¶ 4.  Thus, Vangilder

---

[3]        Like the tax court, we decline to consider whether Harold Vangilder, as a consumer of goods and services, has standing to challenge the validity of the tax, because the other plaintiffs who joined him in filing the complaint operate businesses clearly subject to the TPT. *See Karbal v. ADOR*, 215 Ariz. 114, 116-18, ¶¶ 11, 16-17 (App. 2007) (holding a customer lacked standing to challenge an excise tax because "[t]he legal incidence of the transaction privilege tax is on the seller") (citing *J. C. Penney Co. v. ADOR*, 125 Ariz. 469, 472 (App. 1980)).

contends "voters were asked to approve a tax that applied *solely* to retail sales" in violation of A.R.S. § 42-6106(B), which requires the county transportation excise tax be imposed upon all TPT classifications. We disagree with both the factual premise and the legal import of Vangilder's argument.

¶10          First, A.R.S. § 48-5314(A) required the RTA to adopt a twenty-year regional transportation plan and then "[r]equest by resolution certified to the county board of supervisors that the issue of levying a transportation excise tax . . . be submitted to the qualified electors at a countywide special election or placed on the ballot at a countywide general election." The RTA is not authorized to enact a tax and the June Resolution did not purport to do so. Nor did the June Resolution ask the voters to enact the tax. It simply asked the Board to put a transportation excise tax on the County ballot. Thus, "[t]he most that can be said for" the June Resolution is that it "demand[ed] an election . . . at which the electorate would be asked to decide whether [the tax should be enacted]." *See Saggio v. Connelly*, 147 Ariz. 240, 241 (1985).

¶11          Second, although Vangilder relies on *Braden v. Yuma County Board of Supervisors*, 161 Ariz. 199 (App. 1989), to argue the RTA's failure to properly describe the tax in the June Resolution invalidates the tax, *Braden* does not apply. There, a county board of supervisors attempted to levy an assessment to build a bridge within a flood control improvement district. *Id.* at 200. The relevant statute "required as a prerequisite" that the board first adopt a resolution specifying its intention to undertake a flood control project before imposing an assessment for the project. *Id.* at 203-04. The board had not enacted such a resolution before it approved the bridge and the related assessment, and thus, had not given the required notice of its intentions. *Id.* at 204. Accordingly, the *Braden* court invalidated the assessment because the board's failure to comply with the statute did not "afford[] the landowner an opportunity to be heard on the necessity and wisdom of the proposed improvement." *Id.*; *see also Henningson, Durham & Richardson v. Prochnow*, 13 Ariz. App. 411, 416 (1970). By contrast, nothing in the statutory scheme at issue here, governing passage of a county transportation excise tax, suggests the RTA's resolution was required to or intended to provide the public with notice of the details of the proposed tax. *See generally* A.R.S. § 48-5314(A)(2) (describing the process for referring a transportation excise tax to the voters).

¶12          In fact, A.R.S. § 48-5314(A)(2) only required the authorizing resolution to be sent to the Board — not that it be posted, distributed to the voters, or otherwise publicized. Unlike the statute in *Braden*, the statute

applicable to the county transportation excise tax contemplates that the full and final details of a proposed tax — including "the rate of the transportation excise tax" — will be contained within a publicity pamphlet that is mailed to voters before the election. A.R.S. § 48-5314(C). The Board did just that here; the Pamphlet containing the details of the tax, along with the form of the proposal to be stated on the ballot, gave the public proper notice of the particulars of the Prop 417 tax, and governs the scope and content of the tax.

### B.     The Prop 417 Tax Applies to All TPT Classifications.

¶13          Vangilder and ADOR argue that the tax is invalid because they read Prop 417 to describe a tax that applies only to retail sales in violation of A.R.S. § 42-6106(B)(1). We again disagree.

¶14          When construing a voter-approved measure, "[o]ur primary objective . . . is to place a reasonable interpretation on 'the intent of the electorate that adopted it.'" *State v. Estrada*, 201 Ariz. 247, 250, ¶ 15 (2001) (quoting *Foster v. Irwin*, 196 Ariz. 230, 231, ¶ 3 (2000)). We begin by examining the plain language of the measure, *see Am. Bus Lines, Inc. v. Ariz. Corp. Comm'n*, 129 Ariz. 595, 598 (1981), "giv[ing] the words used 'their natural, obvious and ordinary meaning' unless the context suggests otherwise," *Ariz. Chamber of Commerce & Indus. v. Kiley*, 242 Ariz. 533, 537, ¶ 9 (2017) (quoting *Brewer v. Burns*, 222 Ariz. 234, 239, ¶ 26 (2009)); *see also* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). If the measure is subject to only one reasonable meaning, "[w]e apply the provision as written." *Kiley*, 242 Ariz. at 537, ¶ 9 (citing *Ariz. Early Childhood Dev. & Health Bd. v. Brewer*, 221 Ariz. 467, 470, ¶ 10 (2009)).

¶15          The Prop 417 Pamphlet and ballot asked Pinal County voters:

> Do you favor the levy of a transportation excise (sales) tax **including at a rate** equal to one-half percent (0.5%) of the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail; provided that such rate shall become a variable or modified rate such that when applied in any case when the gross income from the sale of a single item of tangible personal property exceeds ten thousand dollars ($10,000), the one-half percent (0.5%) tax rate shall apply to the first ten thousand dollars ($10,000), and above ten thousand dollars ($10,000), the measure of tax shall be a rate

of zero percent (0.0%), in Pinal County for twenty (20) years to provide funding for the transportation elements contained in the Pinal Regional Transportation Plan?

Do you favor the levy of a transaction privilege (sales) tax for regional transportation purposes, including at a variable or modified rate, in Pinal County?

(Emphasis added.). Voters were then advised: "A 'YES' vote has the effect of imposing a transaction privilege (sales) tax in Pinal County, including at a variable or modified rate, for twenty (20) years to provide funding for the transportation projects contained in the Regional Transportation Plan."

**¶16** Vangilder argues the phrase "including at a rate," emphasized in the quoted language above, established and limited the scope of the tax to "person[s] engaging or continuing in the business of selling tangible personal property at retail" only. Under this interpretation, however, the descriptive phrase "including at a rate" could be deleted entirely from the proposal, such that the voters were said to be asked: "Do you favor the levy of a transportation excise (sales) tax [] equal to one-half percent (0.5%) of the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail?" While Vangilder's interpretation is not entirely untenable, it renders the phrase "including at a rate" meaningless, in contravention to the general rule of construction that "each word, phrase, clause and sentence must be given meaning so that no part will be void, inert, redundant or trivial." *Adams v. Bolin*, 74 Ariz. 269, 276 (1952) (citing *City of Phx. v. Yates*, 69 Ariz. 68, 72 (1949)).

**¶17** The entire sentence can be given meaning if we read the question as: "Do you favor the levy of a transportation privilege (sales) tax . . . in Pinal County?" Under this interpretation, the phrase that begins with the word "including" and continues through the explanation of the tiered-rate structure for the retail sales classification provides one example of what the proposed tax would include. This interpretation aligns with the phrasing of the ballot question and the Pamphlet's explanation of the effect of a "YES" vote — both of which use commas to set off the phrase "including at a variable or modified rate [as applied to retail sales]." *See supra* ¶ 15. Adding a comma before the word "including" in the body of the initial long paragraph on the ballot would more clearly demonstrate an intent to set that phrase apart, but we have long held "that strict rules of technical grammar will not be resorted to to defeat the plain purpose of the statute." *Adams*, 74 Ariz. at 276 (citing *Mahoney v. Maricopa Cty.*, 49 Ariz.

9

479, 492 (1937)); *cf. City of Phx. v. Butler*, 110 Ariz. 160, 162 (1973) (explaining that the average voter may still be able to understand the intended meaning of words even if "[t]he choice of words to be used on a ballot might be clearer").

¶18 Reading all portions of the initiative together, *cf. Indus. Comm'n v. C & D Pipeline, Inc.*, 125 Ariz. 64, 67-68 (App. 1979) ("[I]t is a fundamental principle of statutory construction that a statute should be considered as a whole.") (citations omitted), there is but one reasonable interpretation of Prop 417 as it appeared on the ballot. We thus conclude that "including" modifies "transportation excise (sales) tax," and the remainder of the phrase describes the retail-sales component of a broader tax.

¶19 Vangilder correctly observes the ballot did not identify any of the other fifteen business classifications to which the tax would apply. But generally applicable tax rates — that is, those not variable or modified — are not required to be specified on the ballot itself. *See* A.R.S. § 48-5314 (detailing ballot requirements for a regional transportation excise tax). And, pursuant to statute, a "transportation excise (sales) tax" is a tax that applies across all TPT classifications. *See* A.R.S. § 42-6106(B) (describing the conditions under which the transportation excise tax "shall be levied and collected").

¶20 Additionally, the Pamphlet the Board sent to voters before the election clearly advised that the "transportation excise tax" would "be assessed on the same business transactions that are subject to the State of Arizona transaction privilege (sales) tax." The Pamphlet specifically identified each of the business classifications subject to the TPT and then specified the rate that would apply to each classification, including the tiered-rate structure proposed for retail sales. Thus, even if the scope of the tax was not clear from the ballot alone, secondary principles of construction support the conclusion that the tax was to apply to all business classifications. *See Jett v. City of Tucson*, 180 Ariz. 115, 119-20 (1994) (recognizing the value of "a publicity pamphlet to apprise the voters of the purpose and intent behind the [ballot proposition]" in ascertaining its intended effect); *accord Calik v. Kongable*, 195 Ariz. 496, 500, ¶ 16 (1999); *Laos v. Arnold*, 141 Ariz. 46, 48 (1984).

¶21 For these reasons, we reject Vangilder's suggestion that construing the proposition to apply to TPT classifications other than retail sales would extend the tax to "something not specifically covered by the language" of the proposition, *Corp. Comm'n v. Equitable Life Assurance Soc'y*

*of U.S.*, 73 Ariz. 171, 178 (1951), and "gather new objects of taxation by strained construction or implication," *Ariz. State Tax. Comm'n v. Staggs Realty Corp.*, 85 Ariz. 294, 297 (1959). There is nothing strained in the application of the ordinary meaning of the word "including" to signal that the description of the retail-sales component that followed was merely part of a non-exhaustive list of business classifications to which the proposed tax would apply. *See* A.R.S. § 1-215(14) ("'Includes' or 'including' means not limited to and is not a term of exclusion."); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *accord United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005); and *P.R. Maritime Shipping Auth. v. Interstate Commerce Comm'n*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981).

**¶22** "[T]he courts will not strain, stretch and struggle to uncover hidden taxable items," *State Tax Comm'n v. Miami Copper Co.*, 74 Ariz. 234, 243 (1952) (citing *Alvord v. State Tax Comm'n*, 69 Ariz. 287, 292 (1950)), but such efforts are not required here. When considered as a whole, Prop 417 can only be reasonably read to have proposed a transportation excise tax across all TPT classifications, in accordance with A.R.S. § 42-6106(B).

### C. The Tiered-Rate Structure for Retail Sales is a Permissible "Modified Rate" Within the Meaning of A.R.S. § 42-6106(C).

**¶23** Vangilder and ADOR argue the Prop 417 tax's tiered-rate structure for retail sales is not a permissible "variable or modified rate" within the meaning of A.R.S. § 42-6106(C). That section directs ADOR to "collect the tax at a variable rate if the variable rate is specified in the ballot proposition [and] at a modified rate if approved by a majority of the qualified electors voting." *Id.*

**¶24** Vangilder contends that a modified rate is one that changes an existing rate, but he cites no authority supporting this contention. Because the term "modified rate" appears nowhere else in Arizona's tax code, we will apply the "natural, obvious, and ordinary meaning as understood and used by the people." *Circle K Stores, Inc. v. Apache Cty.*, 199 Ariz. 402, 406, ¶ 11 (App. 2001) (citing *Airport Props. v. Maricopa Cty.*, 195 Ariz. 89, 99, ¶ 35 (App. 1999)). "[R]eference to established, respected dictionaries is appropriate in determining the commonly accepted meaning of words." *Sierra Tucson, Inc. v. Pima Cty.*, 178 Ariz. 215, 220 (App. 1994) (citing *State v. Wise*, 137 Ariz. 468, 470 (1983)).

¶25 The *New Oxford American Dictionary* 1124 (3d ed. 2010) defines "modified" as the adjective form of the verb "modify," to "make partial or minor changes to (something), typically so as to improve it or to make it less extreme." *Black's Law Dictionary* (11th ed. 2019) likewise defines modify as "[t]o make somewhat different; to make small changes to (something) by way of improvement, suitability, or effectiveness[;] . . . [t]o make more moderate or less sweeping; to reduce in degree or extent; to limit, qualify, or moderate." These definitions are broad in scope and, as applied to "rate," would include almost any type of change to the rate but particularly one that, as here, lessens its burden upon the taxpayer.

¶26 Further support for a broad construction of the term "modified" can be found in the legislative history of the transportation excise tax scheme. When the legislature chose to allow the creation of regional transportation authorities, it acknowledged that counties the size of Pinal County "possess unique characteristics," including "[u]nique transportation related funding needs generated by the area's land use, topography and environmental quality . . . unmet by any existing transportation-specific funding mechanisms." 1990 Ariz. Sess. Laws, ch. 380, § 1 (2nd Reg. Sess.). The legislature then determined these needs could be met only through "certain unique strategies," *id.*, including imposition of an excise tax at a variable or modified rate, *see* A.R.S. § 42-6106(C) — an option not specified for any other type of county excise tax, *see* A.R.S. §§ 42-6103 (general excise tax), -6105 (transportation excise tax in counties with a population of 1.2 million persons or more), -6107 (transportation excise tax for roads), -6108 (hotel tax), -6109 (jail facilities excise tax), -6110 (electricity tax), -6111 (capital projects tax), -6112 (judgment bonds tax).

¶27 Vangilder and ADOR nonetheless suggest that the Prop 417 tax's tiered-rate structure is invalid because the County lacks the power "to modify the legislatively defined tax base in any particular classification." *See Maricopa Cty. v. S. Pac. Co.*, 63 Ariz. 342, 347 (1945) ("The authority to levy a tax must be derived from a statutory grant of power."). They argue a county that chooses to enact an excise tax must impose the same tax rate on all income earned within any particular business classification, and the decision to impose a zero percent rate upon retail sales of a single item of personal property over $10,000 effectively created an impermissible tax classification. They cite no authority to support their assertion, and nothing in the plain language of A.R.S. § 42-6106 or the legislative history supports such a limitation.[4] In fact, as ADOR acknowledges, the law governing

---

[4] We are aware the legislature considered but did not pass a bill that would have expressly approved the tiered-rate structure Pinal County

Arizona's TPT contains countless deductions, exemptions, and exclusions, and none of them are treated as creating a new TPT classification. Nor is the use of the singular term "rate" within A.R.S. § 42-6106 (directing the transportation excise tax be collected "[a]t a rate") determinative; when interpreting statutes, "[w]ords in the singular number include the plural" and vice versa. A.R.S. § 1-214(B).

¶28 ADOR next argues that the tax rate on income above $10,000 from the retail sale of any one item is effectively zero, and "is not a tax at all, because zero is not a rate." Thus, ADOR contends the Prop 417 tax violates the statutory mandate that a transportation excise tax "*shall be levied and collected*" across all business classifications. A.R.S. § 42-6106(B) (emphasis added). ADOR again cites no authority to support this assertion. Moreover, its position is inconsistent with the legislature's decision to impose a zero percent tax rate upon the commercial lease classification — a tax that has been in effect for more than twenty years. *See* 1997 Ariz. Sess. Laws, ch. 150, § 75 (1st Reg. Sess.) (adopting a zero percent rate for commercial lease classification, now codified at A.R.S. § 42-5010(A)(4)). If the legislature sought to prohibit the voters from approving certain types or levels of modification to the county transportation excise tax rate, the legislature could and should have done so.

¶29 Finally, ADOR, which collects all TPTs imposed by the cities, towns and counties in Arizona, argues the tiered-rate structure is confusing and will create "administrative chaos" in implementation. ADOR's fear of imminent havoc is unpersuasive. More than twenty Arizona cities and towns, including Phoenix and Glendale, have adopted the Model City Tax Code, which allows for an identical tiered-rate structure for retail sales.[5] *See*

---

voters passed. "[L]egislative history and historical background of *an enacted statute* provides guidance in ascertaining the intent of the legislature[, but] this principal has no application to *proposed*, but unenacted, legislation." *City of Flagstaff v. Mangum*, 164 Ariz. 395, 401 (1990) (citing *Dupnik v. MacDougall*, 136 Ariz. 39, 42 (1983), and *State v. Barnard*, 126 Ariz. 110, 112 (App. 1980)) (emphasis in original). Therefore, "[w]e will not speculate on the intent of the legislature in failing or refusing to adopt clarifying amendments." *Id.*

[5] The Arizona cities that have adopted a tiered-rate structure for retail sales include: Apache Junction, Avondale, Benson, Casa Grande, Coolidge, Douglas, Eagar, Eloy, Glendale, Globe, Goodyear, Page, Phoenix, Pinetop-Lakeside, Quartzsite, Safford, San Luis, Superior, Thatcher, Tolleson, Wickenburg, Willcox, and Yuma. *See City Profile*, Model City Tax Code,

Ariz. Model City Tax Code § 460(d), http://www.modelcitytaxcode.az.gov/articles/S4_460.htm. Moreover, a constitutional tax must be applied as written regardless of the difficulties ADOR may encounter in its administration. *See ADOR v. Ormond Builders, Inc.*, 216 Ariz. 379, 389, ¶¶ 44-45 (App. 2007).

¶30 Accordingly, we conclude that the tiered rate within the transportation excise tax approved via Prop 417 does not violate A.R.S. § 42-6106(C) and does not render the tax invalid.[6]

### D. The Modified Rate Does Not Violate the U.S. or Arizona Constitutions.

¶31 Vangilder argues the tiered-rate structure for retail sales in the Prop 417 tax violates constitutional equal protection guarantees and constitutes an illegal special law. We review constitutional challenges *de novo*. *See Gallardo v. State*, 236 Ariz. 84, 87, ¶ 8 (2014). In doing so, we presume a measure is constitutional unless proven otherwise beyond a reasonable doubt. *See J. C. Penney*, 125 Ariz. at 472 (citing *Shaw v. State*, 8 Ariz. App. 447, 452 (1968)).

¶32 The U.S. and Arizona Constitutions guarantee equal protection of the law. *See* U.S. Const. amend. XIV, § 1 ("No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."); Ariz. Const. art. 2, § 13 ("No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."). "[F]or all practical purposes," the equal protection analysis is the same under the Arizona and U.S. Constitutions. *Valley Nat'l Bank of Phx. v. Glover*, 62 Ariz. 538, 554 (1945).

¶33 A tax statute is not unconstitutional simply because it does not impose an identical burden on all taxpayers; "if there is a rational basis for the classification, there is no constitutional infirmity." *State v. Levy's*, 119 Ariz. 191, 192 (1978). "In determining whether a statute meets the

---

(Nov. 18, 2019), https://www.modelcitytaxcode.az.gov/City_profiles/City_profiles.htm.

[6] Because we conclude the tiered-rate structure for retail sales is a modified rate authorized within A.R.S. § 42-6106(C), we need not and do not address the parties' arguments regarding the meaning of "variable rate."

rational basis standard, [courts] must first ascertain whether the challenged legislation has a legitimate purpose and then determine if it is reasonable to believe that the classification will promote that purpose." *Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 566 (1990) (citations omitted). Rational basis review "is especially deferential in the context of classifications made by complex tax laws." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992); *accord City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

¶34　　　　Vangilder asserts the County proposed the tiered-rate structure for retail sales at the urging of businesses that sell high-priced retail items, such as cars, farming equipment, and recreational vehicles, who feared the transportation excise tax would drive buyers to neighboring counties to make their high-dollar purchases.[7]　The County, however, has a legitimate interest in encouraging sales and other economic activity within its jurisdiction. *See State ex rel. ADOR v. Dillon*, 170 Ariz. 560, 569 (App. 1991) (recognizing a "legitimate governmental interest in raising revenues"); *cf. Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 560 (1978) ("[A] government may validly 'foster what it conceives to be a beneficent enterprise.'") (quoting *Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 512 (1937)).　A partial reduction in the tax rate upon certain business transactions is a rational way to encourage sales and promote economic activity. *See Levy's*, 119 Ariz. at 191-92 (finding no equal protection violation in a statute exempting TPT upon sales under $1,000 to Mexican residents with proper documentation within thirty miles of the Mexican border where its purpose was to "bring back business to the areas"); *see also Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 581-82 (1977) (noting a use tax "eliminat[es] the incentive to make major purchases in [s]tates with lower sales taxes").

¶35　　　　For example, without the tiered-rate structure, an Apache Junction resident in the market for a $500,000 motor home could avoid paying $2,500 in Pinal County TPT by driving a short distance to buy the same motor home in the Phoenix metropolitan area.　The County could reasonably believe that this resident is unlikely to spend the time, gas, and

---

[7]　　　　Vangilder asserts that the Prop 417 tax grants *consumers* purchasing single high-dollar items a benefit not available to those buying lower-cost items.　But "[t]he legal incidence of the transaction privilege tax is on the seller." *J. C. Penney*, 125 Ariz. at 472.　The retailer may choose to pass the cost on to consumers, *see Ariz. State Tax Comm'n v. Garrett Corp.*, 79 Ariz. 389, 393 (1955), but that choice confers no legal rights on the consumer, *Karbal*, 215 Ariz. at 118, ¶ 18.　Therefore, we only consider the application of the Prop 417 tax on retailers.

energy to travel out-of-county, however, if the tax applies only to the first $10,000 of the sale and totals only $50. In addition, retailers who lose high-dollar sales to neighboring counties might decide to relocate outside the County, causing a further decrease in revenue. Moreover, the tiered-rate tax does not differentiate between the locations of business or types of tangible property offered for sale; it applies equally to all retailers. *See Gila Meat Co. v. State*, 35 Ariz. 194, 202 (1929) (invalidating tax upon slaughterhouses that varied by location because the tax was not equal and uniform). Accordingly, we conclude the tiered-rate structure for retail sales adopted within Prop 417 is rationally related to a legitimate government purpose and does not violate equal protection.[8]

¶36 The Arizona Constitution also prohibits enactment of any "local or special laws [regarding the] . . . [a]ssessment and collection of taxes." Ariz. Const. art. 4, pt. 2, § 9. A statute is a not a special law if: "(1) there is a rational basis for the classification; (2) the classification is legitimate, encompassing all members of the relevant class; and (3) the class is flexible, allowing members to move into and out of the class." *State Comp. Fund v. Symington*, 174 Ariz. 188, 193 (1993) (citing *Republic Inv. Fund I v. Town of Surprise*, 166 Ariz. 143, 148-49 (1990), and *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 557-58 (1981)). "If one of these three requirements is not met, the legislation is invalid." *Id.* (citing *Republic Inv.*, 166 Ariz. at 149).

¶37 The first prong of the special-law test "is identical to that required for equal protection analysis." *Gallardo*, 236 Ariz. at 88, ¶ 12. We have already determined that the County had a rational basis to treat sales of high-priced retail items differently. *See supra* ¶ 34. The Arizona Constitution also requires the classification be legitimate and flexible. *Republic Inv.*, 166 Ariz. at 148, 150. Vangilder concedes these points through his silence. Moreover, the tiered-rate structure applies equally to all retailers selling single items of tangible personal property over $10,000, and

---

[8] Although Vangilder contends the tiered-rate structure was in fact proposed "to avoid political opposition from powerful businesses," he fails to meet his burden, as "the one attacking tax legislation[,] to negate every conceivable basis which supports it." *Tucson Newspapers, Inc. v. City of Tucson*, 172 Ariz. 378, 384 (App. 1992) (quotation omitted).

there is no restriction on who can join or leave the class.[9]  Therefore, Prop 417 is not an unconstitutional special law.

## II.    Vangilder is Not Entitled to an Award of Attorneys' Fees.

**¶38**         In his cross-appeal, Vangilder argues the tax court abused its discretion in denying his request for an award of attorneys' fees under the private attorney general doctrine.  *See Cave Creek Unified Sch. Dist. v. Ducey*, 231 Ariz. 342, 353, ¶ 34 (App. 2013) (explaining the private attorney general doctrine permits a discretionary award of fees to a party that has vindicated an important public right) (citing *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989)).  Because we reverse the court's order granting relief to Vangilder, he is not eligible for an award of fees.  Therefore, the order denying fees is affirmed.

---

[9]      Vangilder raises several arguments for the first time in his reply brief that need not be considered.  *See Deutsche Bank Nat'l Tr. Co. v. Pheasant Grove L.L.C.*, 245 Ariz. 325, 330, ¶ 17 n.5 (App. 2018) (citing *Tucson Estates Prop. Owners Ass'n v. McGovern*, 239 Ariz. 52, 55, ¶ 11 n.4 (App. 2016)).  Nonetheless, he cites no authority to support his suggestion that we should compare the effects of the tax on retailers to its effects on businesses that are not similarly situated — i.e., those subject to tax under a different classification.  Nor are we persuaded that the $10,000 single-item cap is arbitrary.  As detailed in ¶ 35, the $10,000 limit is designed to result in a $50 maximum tax — an amount deemed *de minimis* enough to discourage purchasers of high-dollar items from leaving the County to avoid the tax.  Finally, that the County could have crafted the excise tax to encompass other high-dollar transactions, such as those involving multiple items totaling $10,000, to a similar end, is immaterial; the County is not required to choose the most effective means of achieving its goals so long as the means it chooses has some conceivable rational basis.  *See State v. Hammonds*, 192 Ariz. 528, 532, ¶ 15 (App. 1998) (citing *Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 491 (1977)).

## CONCLUSION

**¶39** The tax court's order invalidating the Prop 417 tax is reversed, and its order denying Vangilder's request for attorneys' fees and costs is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA